IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**BARBARA PHILLIPS,**

                **Plaintiff,**

v.                                                            Case 2:21-cv-02730-TLP-cgc

**SHELBY COUNTY GOVERNMENT,**

                **Defendant.**

---

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Before the Court is Defendant Shelby County Government's ("Defendant") Motion to Dismiss Complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry (D.E.) #11). Pursuant to Administrative Order 2013-05, the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Dismiss be GRANTED.

**I.   Introduction**

On November 23, 2021, Plaintiff Barbara Phillips ("Plaintiff") filed a *pro se* Complaint alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq*. ("ADA"). Plaintiff alleges that the discriminatory conduct includes failure to accommodate her disability, disparate treatment, hostile work environment, retaliation, and constructive discharge.[1]

---

[1] Plaintiff has attempted to allege disability-related claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; however, Title VII does not cover such claims, *see* 42 U.S.C. § 2000e-2(a)(1) (setting forth unlawful employment practices on the basis of "race, color, religion, sex, or national origin"). Plaintiff also mentions the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*., but rather than alleging a violation thereof, she merely asserts that she utilized leave under the FMLA two decades before this case was filed. (*See* Compl. ¶ 10). Accordingly, it is

Specifically, Plaintiff alleges that she began working for Defendant in May 1998 as a deputy jailer. (Compl. ¶ 9). She alleges that, in 2013, Jail East was using a cleaning product known as "Razor Orange." (*Id*. ¶ 19). At that time, Plaintiff discovered that she was allergic to harsh chemicals, which caused her difficulty breathing, teary eyes, and migraines. (*Id*.) Plaintiff notified "the lieutenants and sergeants" of her "chemical exposure" to Razor Orange but received no response. (*Id*.) Plaintiff also wrote a letter to THOSHA[2] about her health concerns, and a jail administrator posted THOSHA's response thereto in the facility. (*Id*. ¶ 20).

Plaintiff alleges that, in September 2013, she experienced a life-threatening asthma attack; however, she does not state whether she believes that this specific incident was due to chemical exposure or another cause. (*Id*. ¶ 21). Additionally, she alleges that, between 2018 and 2020, her exposure to harsh chemicals increased and she experienced between seven and eight on-the-job injuries, including multiple asthma attacks and at least five occasions of anaphylactic shock, the treatments for which negatively affected her diabetes. (*Id*. ¶ 28). At some point, Plaintiff's treating physicians recommended the "avoidance of harsh chemical exposure" in the workplace. (*Id*. ¶ 29). Plaintiff alleges that she requested such accommodations from her employer "countless times" but that the requests were denied. (*Id*. ¶ 30). Plaintiff alleges that, "[o]ver the years," she "observed similarly situated officers *in* her protected class receive accommodation for their health conditions" and observed officers with less seniority be allowed to work in areas free of harsh chemicals and cleaning products. (*Id*. at ¶ 31) (emphasis added).

---

RECOMMENDED that Plaintiff's purported Title VII claim and any FMLA claim she sought to plead both be dismissed for failure to state a claim upon which relief may be granted.

[2] It is unclear whether Plaintiff is referring to the Tennessee Occupational Safety and Health Administration (TOSHA).

Plaintiff alleges that, on December 25, 2019, Plaintiff complained to her superiors about significant cleanliness concerns in the mental-health pods that she believed could result in sickness. (*Id*. ¶ 27). Specifically, she states that she reported "[e]xcessive feces, urine[,] mice and gnats," which she believed created concerns "for the *inmates*" of tuberculosis, hepatitis, staph infections, and upper respiratory infections." (*Id*.) (emphasis added). Although these concerns cite general respiratory concerns, Plaintiff does not allege that she reported any specific concerns regarding her own health. Plaintiff alleges that her complaints were not acknowledged. (*Id*).

Plaintiff alleges that, after March 2020, due to the COVID-19 pandemic, cleaning efforts and the use of harsh chemicals increased. (*Id*. ¶ 33). She alleges that she continued to request safer work areas for her well-documented medical conditions but that no such accommodations were made. (*Id*.)

Plaintiff alleges that, on July 6, 2020, she "notified Human Resources that she would not be able to work mandatory overtime" due to her history of allergic reactions to harsh chemicals, which she states were used hourly. (*Id*. ¶ 34). Plaintiff was advised that she was required to work mandatory overtime but that she could speak to the shift commander who could attempt to accommodate her needs. (*Id*.)

Plaintiff alleges that, on August 12, 2020, she launched her own investigation into the safety of BIOVEX, a chemical being used to clean inmates' cloth masks. (*Id*. ¶ 35). Plaintiff spoke with the chemical's manufacturer, who advised that the product must be used with ventilation and that it should only be used on hard surfaces. (*Id*.) On August 13, 2020, Plaintiff was notified that she would be written up for failure to spray inmates' masks with BIOVEX. (*Id*. ¶ 36).

Plaintiff alleges that she continued to work in unfavorable conditions throughout her tenure and that she had to take more recent medical leave for "epileptic seizures due to stress, uncontrollable hypertension, severe PTSD, anxiety, depression, and worsened diabetes due to medications that treated her allergic reactions." (*Id*. ¶¶ 37-39).

Plaintiff alleges that, on March 3, 2021, she received a termination letter stating that she had been on consecutive sick leave since August 30, 2020 and that she would no longer be employed as of April 30, 2021. (*Id*. ¶¶ 41). Plaintiff alleges that, because she had no feasible option to return to work that was not life-threatening, she was constructively discharged. (*Id*. ¶ 41).[3]

On December 23, 2021, Defendant filed its Motion to Dismiss Plaintiff's Complaint. Defendant argues as follows: (1) that portions of Plaintiff's Complaint fall outside the applicable statute of limitations; (2) that Plaintiff has failed to exhaust her administrative remedies; and, that (3) that Plaintiff fails to state a claim under the ADA. Plaintiff's Response (D.E. #12) and Defendant's Reply (D.E. #13) further addressed their positions on this issue.[4]

II. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When addressing a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of*

---

[3] Plaintiff's Complaint also contains allegations relating to disputes between herself and Sergeant Gail Peppers; however, none of these pertain to her disability or whether or not she was exposed to harsh chemicals at the facility. (See ¶¶11-18, 32).

[4] Plaintiff also filed a Sur-Reply to Defendant's Motion to Dismiss (D.E. #14); however, such a filing is not permitted pursuant to Local Rule 12.1 and, thus, will not be considered for purposes of this Report and Recommendation.

4

*United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (citing *Twombly*, 550 U.S. at 555). Still, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v.*

*Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

### III. Proposed Conclusions of Law

#### a. Statute of Limitations

Before a plaintiff can file a federal lawsuit for employment discrimination, she must first file a charge with the Equal Employment Opportunity Commission ("EEOC") or a similar state authority. *Amini v. Oberlin Coll.,* 259 F.3d 493, 498 (6th Cir.2001). This functions as a screen to see what, if any, claims may be remedied by the administrative process. *Id*. Such a charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. §2000e-5(e)(1); *see Loffredo v. Daimler AG*, 666 F. App'x 370, 377 (6th Cir. 2016).

Plaintiff filed her EEOC charge with the Tennessee Human Rights Commission ("THRC") on November 11, 2020. Thus, to survive the statute of limitations, her claims must arise from unlawful employment practices that occurred on or after January 15, 2020. (D.E. #11-2). Upon review of her Complaint, it is RECOMMENDED that the time-barred allegations include all allegations prior to that date, including any claim arising from the use of Razor Orange in 2013. (*Id.* ¶¶ 19-21).

The Complaint also alleges that Defendant failed to accommodate her asthma beginning in 2018 when they increased the usage of harsh chemicals and continuing at least into at least July 2020. (Compl. at ¶¶ 28, 34). Plaintiff alleges that she requested an accommodation to work in a position that would not cause her severe asthma attacks "countless times" but that the requests were denied. Although this general timeframe includes requests that are both inside and outside the statute of limitations, the only date provided in the Complaint that is remotely related to an accommodation is July 6, 2020. (*Id*. ¶ 34). It is RECOMMENDED that any claims arising from this date are not time-barred.[5][6]

### b. Exhaustion of Administrative Remedies

The next step is to analyze whether Plaintiff exhausted her administrative remedies for the claims that are within the statute of limitations. A plaintiff must satisfy two prerequisites before filing a federal action. The first is that the plaintiff must file a charge of discrimination with the EEOC or similar state authority, as discussed above. The second requirement is timely filing the federal action after the EEOC's right-to-sue letter is provided. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989). The Sixth Circuit has stated that, as a general rule "the

---

[5] Plaintiff also alleges that the facility increased the usage of harsh chemicals in March 2020 in response to the COVID-19 pandemic; however, she does not assert any specific injury due to that increase or any new request for disability accommodation pertaining to a higher usage of chemicals.

[6] In addition, Plaintiff does attach several exhibits to her Complaint. The Court is not required to consider such documents as "evidentiary material" to add substantive allegations to a Complaint. *See Verna Steverson v. Walmart*, No. 3:19-cv-00140, 2019 WL 3822179, *2 (M.D. Tenn. 2019); (citing *Copeland v. Aerisyn, LLC*, 1:10-cv-78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011) (citing cases)). First, Plaintiff includes documentation from medical providers in June and July 2018 requesting an accommodation for her to avoid exposure to harsh chemicals. (*See* D.E. #1-7 at PageID 51, 53-55). Second, she includes various communications regarding her work assignments. (*See* D.E. # 1-8). Although most of these documents include emails and written correspondence regarding post assignments that do not reference issues with chemical exposure or any need for medical accommodation, they do include two that do. The first documented conversation occurs in April 2018, which is well outside of the statute of limitations. (*See* D.E. # 1-8 at PageID 72). The second is dated February 2, 2020, which is within the statute of limitations (*See* D.E. #1-8 at PageID 71). There is no evidence as to how this request was addressed, other than her generalized assertions in her Complaint that her accommodations requests were repeatedly denied. (*See* Compl. ¶ 30).

7

judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002).

There are three instances detailed in the Complaint that occur within the statute of limitations: (1) Plaintiff's July 6, 2020 notification to Human Resources that she would not be able to work mandatory overtime (Compl. ¶ 34); (2) Plaintiff's August 2020 investigation into the safety of a cleaning product, BIOVEX, and subsequent instruction that she must use it on inmates' facemasks despite her concerns (Compl. at ¶¶ 35-36); and, (3) her termination, of which she was notified on March 3, 2021 and became effective on April 30, 2021 (Complaint at ¶¶ 40-41). Plaintiff's EEOC Charge in no way mentions the BIOVEX issues. (D.E. #11-2 at PageID 124). Additionally, Plaintiff's notice of termination and eventual discharge was not included in the EEOC Charge, as it occurred after the EEOC Charge was filed in November 2020. (*Id.*) Thus, it is RECOMMENDED that the only claim on which Plaintiff has exhausted her remedies would be one arising from the July 6, 2020 notification.

### c. Failure to State a Claim

Finally, the Court must consider whether Plaintiff's allegations surrounding Plaintiff's July 6, 2020 notification to Human Resources that she was not able to work mandatory overtime due to her previous allergic reactions and the hourly chemical usage states an ADA failure-to-accommodate claim.

Defendant argues that Plaintiff has failed to plead two elements of a *prima facie* case of an ADA failure-to-accommodate claim—namely, that she requested an accommodation and that Defendant failed to provide it. *Timiko Hamilton v. Shelby County, Tennessee*, 2021 WL 1759859,

at 5 (W.D. Tenn. May 4, 2021) (citing *Kirilenko-Ison v. Bd. Of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 669 (6th Cir. 2020)).  As a technical matter, this is not the proper standard for a motion to dismiss because the prima facie case "is an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510 (2002); instead, to survive a motion to dismiss, a plaintiff must only comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a).  Yet, in this instance, the elements of the *prima facie* case that Defendant argues she did not properly plead are also essential to comply with Rule 8(a)—namely, that she sought an ADA accommodation and that it was denied.

Here, Plaintiff's Complaint does not specifically allege that she made an accommodations request; instead, it states that she "notified Human Resources that she would not be able to work mandatory overtime" due to the hourly chemical usage.  (Compl. ¶ 34).  In response to that notification, she was informed that she was required to work mandatory overtime but that she could ask shift commanders for accommodations.  (*Id.*)  Plaintiff does not allege whether or not she did so and, if she did, what decisions were made.

This does not suffice to state a short and plain claim for relief.  To make an ADA accommodation request, an employee is not required to use the "magic words" of "accommodation" or "disability."  *Judge v. Landscape Forms,* Inc., 592 Fed. Appx. 403, 407 (6th Cir. 2014) (quoting *Leeds v. Potter*, 249 Fed. Appx. 442, 449 (6th Cir. 2007)).  However, the initial burden of making a request of an accommodation rests upon the employee.  *Judge*, 592 Fed. Appx. at 407 (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998)).  If and only if Plaintiff does so will it then become the employer's duty to engage in the "interactive process" under the ADA to attempt to accommodate the disability.  *Melange v. City of Center*

9

*Line*, 482 Fed. Appx. 81, 84 (6th Cir. 2012) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)). Even in the light most favorable to the Plaintiff, and even with a liberal construction due to her status as a *pro se* litigant, her Complaint does not state that she made a request for an accommodation that would begin the ADA accommodations process. Accordingly, it is RECOMMENDED that Plaintiff has failed to satisfy the requirements of Rule 8(a) and that any purported ADA claim for failure to accommodate that arises from these allegations be DISMISSED pursuant to Rule 12(b)(6).

### IV.  Conclusion

For the reasons set forth herein, it is RECOMMENDED that all of Plaintiff's claims be DISMISSED with prejudice except those that arose after the filing of her EEOC Charge. As Plaintiff has not had an opportunity to exhaust her administrative remedies on any claims arising after her EEOC Charge, it is RECOMMENDED that these claims be DISMISSED without prejudice.

**SIGNED** this 14th day of April, 2022.

                                   s/ Charmiane G. Claxton
                                   CHARMIANE G. CLAXTON
                                   UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**